CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
August 05, 2025
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MS. ANTONIO LAMONT ALLISON, ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> S. BOGGS, ) <br> **Defendant.** ) | Case No. 7:24-cv-00665 <br><br><br> **By: Michael F. Urbanski** <br> **Senior United States District Judge** |

## MEMORANDUM OPINION

Antonio Lamont Allison, a pro se state inmate who identifies as a transgender woman, filed this civil action under 42 U.S.C. § 1983 against S. Boggs, a correctional officer at Wallens Ridge State Prison.[1] Boggs has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. For the following reasons, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

### I. Background

At the time of the events giving rise to this action, Allison was housed in the Restorative Housing Unit (RHU) at Wallens Ridge. Compl., ECF No. 1, at 2. She alleges that Boggs repeatedly subjected her to harassment and ridicule based on her gender identity and sexual orientation, and made statements in front of other inmates that threatened her safety. For instance, on multiple occasions in May, June, July, August, and September 2024, Boggs called Allison a "cock-sucker," a "hot m.f.," and a transgender "rapist" in front of other inmates. Id. at 23–28. He also called Allison a "snitch" and accused her of filing "paperwork every day

---

[1] Consistent with the complaint, the court will use female pronouns when referring to Allison.

snitching on everybody." Id. Allison alleges that Boggs threatened to kill her on several occasions and that other inmates started "calling her all types of names," such as "old faggot ass" and "hot ass rapist," as well as threatening to harm her themselves. Id. at 23–24.

While Boggs was doing rounds on June 16, 2024, Allison handed him two manila envelopes containing legal documents. Id. at 4. Allison alleges that one of the envelopes was addressed to the United States District Court for the Eastern District of Virginia and that it contained a "42 U.S.C. [§] 1983 civil action [for] failure to protect." Id. The other envelope contained a "motion to vacate, set aside, or correct sentence by a person in state custody." Id. Allison alleges that Boggs took the envelopes from her but failed to deliver them to the mailroom to be processed. Id. at 4, 7. She further alleges that Boggs opened the envelopes and read her legal mail "in order to reveal to offenders that she was trying to get on [protective custody]." Id. at 11.

On September 15, 2024, Allison executed a form complaint against Boggs under 42 U.S.C. § 1983. Allison claims that Boggs's actions violated her rights under the First Amendment, the Eighth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. See id. at 9–16.

## II.  Standard of Review

Boggs has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially

plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed by a pro se plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III. Discussion

Allison filed suit against Boggs under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

3

deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

**A.     First Amendment Claims**

   **1.     Right to Access the Courts**

Allison first claims that Boggs violated her right to access the courts by failing to process the legal mail that she handed him on June 16, 2024. State inmates "have a constitutionally protected right of access to the courts that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment." DeMarco v. Davis, 914 F.3d 383, 387 (5th Cir. 2019) (internal quotation marks omitted); see also Pink v. Lester, 52 F.3d 73, 76 (4th Cir. 1995). Because "meaningful access to the courts is the touchstone," an inmate must plead facts showing that she suffered an "actual injury" as a result of the denial of access. Lewis v. Casey, 518 U.S. 343, 351 (1996) (internal quotation marks omitted). In particular, an inmate must show that she "lost or will lose the opportunity to pursue a 'nonfrivolous' and 'arguable' claim." Pronin v. Johnson, 628 F. App'x 160, 162 (4th Cir. 2015) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)); see also Jackson v. City of Cleveland, 64 F.4th 736, 746 (6th Cir. 2023) (identifying "having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline as some examples of actual prejudice to pending or contemplated litigation") (internal quotation marks omitted). The underlying cause of action must be "described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Harbury, 536 U.S. at 416.

Allison's complaint fails to set forth sufficient facts to satisfy the "actual injury" requirement. Although she alleges that the legal envelopes that Boggs obtained from her contained a motion to vacate her state sentence and a civil rights complaint for failure to protect, she does not describe the cases in specific enough terms to satisfy the "nonfrivolous test." Id. Additionally, Allison does not allege that she missed a deadline or suffered any other actual injury or prejudice as a result of the legal mail not being processed after being given to Boggs. Consequently, the complaint fails to state a claim for denial of access to the courts.

### 2. Right to Free Speech

Allison also alleges that Boggs violated her First Amendment right to free speech by opening and reading the legal mail that she delivered to him on June 16, 2024. "The First Amendment, as incorporated through the Fourteenth Amendment, prohibits States from 'abridging the freedom of speech.'" Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (quoting U.S. Const. amend. I). This proscription extends to restrictions that directly burden speech, as well as government actions that have indirect chilling effects. Id. The United States Court of Appeals for the Fourth Circuit has recognized that opening an inmate's legal mail outside her presence "can chill protected speech." Id. However, isolated incidents of legal mail being opened outside an inmate's presence do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (holding that "a few isolated instances of plaintiff's mail being opened outside of his presence" in violation of a jail policy "were not of constitutional magnitude"); see also Gibson v. Erickson, 830 F. App'x 372, 373 (3d Cir. 2020) (explaining that "while a pattern or practice of opening legal mail outside the presence of an inmate is sufficient to state a First Amendment violation, a single instance is usually not

5

enough") (internal quotation marks and citations omitted); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation" and that inmates "must show that prison officials regularly and unjustifiably interfered with [their] legal mail") (internal quotation marks omitted).

Allison's complaint describes a single incident in which Boggs allegedly opened and read her legal mail. She does not allege that Boggs engaged in a "deliberate pattern or practice" of tampering with her legal mail or opening it outside her presence. See Haze, 961 F.3d at 659 (holding that a reasonable jury could find that the defendants engaged in a deliberate pattern or practice where the plaintiff identified "fifteen instances of interference with his legal mail," seven of which involved mail being opened, copied, and forwarded to the District Attorney's office). Consequently, the complaint fails to state a violation of Allison's First Amendment right to free speech.

**B.     Eighth Amendment Claim**

Allison next alleges that Boggs acted with deliberate indifference to her health or safety in violation of the Eighth Amendment by repeatedly calling her a snitch in front of other inmates. Boggs argues that Allison's allegations are entirely conclusory and fail to state a cognizable Eighth Amendment claim. The court disagrees and, therefore, will deny the motion to dismiss with respect to this claim.

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). "An Eighth Amendment claim of this nature requires proof of two elements to establish deprivation of a constitutional right." Danser v. Stansberry,

6

772 F.3d 340, 346 (4th Cir. 2014). "First, an inmate must establish a serious deprivation of his rights in the form of a serious or significant physical injury," id. (internal quotation marks omitted), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (citing Helling v. McKinney, 509 U.S. 25, 33–35 (1993)). Second, an inmate must establish that the defendant acted with "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834. "A plaintiff establishes 'deliberate indifference' by showing that the prison official 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Danser, 772 F.3d at 347 (alterations in original) (quoting Farmer, 511 U.S. at 837).

Allison has alleged sufficient facts to support both elements of an Eighth Amendment claim. As the Fourth Circuit has observed, "[i]t is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'" Miller v. Leathers, 913 F.2d 1085, 1088 n.1 (4th Cir. 1990). "Evidence that a prison official exposed a prisoner as a 'snitch' is sufficient to establish a substantial risk of serious harm." Reyna v. Pride, No. 7:22-cv-00309, 2023 WL 5019537, at *2 (W.D. Va. Aug. 7, 2023) (collecting cases); see also Westmoreland v. Butler Cnty., 29 F.4th 721, 729 (6th Cir. 2022) ("[W]e have recognized that being identified as a 'snitch' in prison puts an inmate at substantial risk of assault."). Allison alleges that Boggs repeatedly accused her of being a snitch in front of other inmates and that inmates started threatening to kill her. Such allegations are sufficient to satisfy the first element. See Westmoreland, 29 F.4th at 730 ("Here, Westmoreland has established this element by showing that St. Clair identified him as a 'rat' in front of his cellmates and informed other inmates that Westmoreland had told on him.") (internal citations omitted).

7

Allison's allegations are also sufficient to satisfy the subjective element. "[B]ecause the risk attendant to being labeled a snitch is well-understood and readily apparent to corrections officials, facts indicating that an official intentionally exposed an inmate as a snitch are sufficient to establish deliberate indifference." Allison v. Ball, No. 7:18-cv-00125, 2019 WL 1049393, at *3 (W.D. Va. Mar. 5, 2019). Accordingly, the court concludes that the complaint states a plausible claim for relief under the Eighth Amendment.

## C.    Equal Protection Claim

The court also concludes that the complaint states a plausible violation of the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause protects against both sexual harassment by a state actor under color of state law and discrimination on the basis of sexual orientation." Hughes v. Farris, 809 F.3d 330, 334 (7th Cir. 2015) (internal citations omitted). Allison alleges that Boggs singled her out for harassment and discriminatory treatment because of her gender identity and sexual orientation, and that he repeatedly called her a "cock-sucker" and a transgender "rapist" in front of other inmates in the RHU, prompting them to threaten to "punish[]" her and call her a "faggot" and a "hot ass rapist." Compl. at 23–27. At this stage of the proceedings, Allison's complaint and other submissions allow the court to reasonably infer that Boggs treated Allison differently than similarly situated inmates, "that the unequal treatment was the result of intentional or purposeful discrimination," and "that the disparate treatment was not reasonably related to any legitimate penological interests." Desper v. Clarke, 1 F.4th 236, 248–49 (4th Cir. 2021) (internal quotation marks omitted); see also Gilliam v. Dep't of Pub. Safety & Corr. Servs., No. 1:23-cv-1047, 2024 WL 5186706, at *13 (D. Md. Dec. 20, 2024) (concluding that transgender

8

inmates stated a plausible equal protection violation premised in part on harassment and ridicule by prison staff); Tay v. Dennison, 457 F. Supp. 3d 657, 682–83 (S.D. Ill. 2020) (concluding that a transgender inmate who had been exposed to frequent and ongoing harassment based on her gender identity was likely to succeed on the merits of her equal protection claim). Consequently, the motion to dismiss will be denied with respect to this claim.

## IV.  Conclusion

For the reasons stated, Boggs's motion to dismiss under Rule 12(b)(6), ECF No. 19, is **GRANTED IN PART AND DENIED IN PART**. An appropriate order will be entered.

Entered: August 5, 2025

Michael F. Urbanski
U.S. District Judge
2025.08.05 10:40:53
-04'00'

Michael F. Urbanski
Senior United States District Judge