CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

June 29, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MS. ANTONIO LAMONT ALLISON,  )
    Plaintiff,                          )    Case No. 7:24-cv-00665
                                        )
v.                                    )
                                        )    By: Michael F. Urbanski
S. BOGGS,                             )    Senior United States District Judge
    Defendant.                          )

## MEMORANDUM OPINION

Antonio Lamont Allison, proceeding pro se, is a transgender inmate who identifies as female. She filed this civil action under 42 U.S.C. § 1983 against S. Boggs, a correctional officer at Wallens Ridge State Prison(Wallens Ridge or WRSP), where she was previously incarcerated. Allison claims that Boggs acted with deliberate indifference to her health and safety in violation of the Eighth Amendment by repeatedly calling her a snitch in front of other inmates. She also claims that Boggs violated her Fourteenth Amendment right to equal protection by singling her out for harassment and discriminatory treatment because of her gender identity and sexual orientation. Boggs has moved for summary judgment on the ground that Allison failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act (PLRA). ECF No. 51. Allison has not responded to the motion, and the time for doing so has expired.*
For the following reasons, the motion for summary judgment is **DENIED**.

### I.    Background

**A.    Summary of the Allegations Against Boggs**

---

    * The Clerk previously advised the parties that the court would decide the matter without further notice if no response was timely filed. ECF No. 53.

At all times relevant to this case, Allison was incarcerated at Wallens Ridge in Big Stone Gap, Virginia, where Boggs worked as a correctional officer. Allison alleges that Boggs repeatedly subjected her to harassment and ridicule based on her gender identity and sexual orientation, and made statements in front of other inmate that threatened her safety. For instance, on multiple occasions in May, June, July, August, and September 2024, Boggs purportedly called Allison a "cock-sucker," a "hot m.f.," and a transgender "rapist" in front of other inmates. Compl., ECF No. 1, at 23–28. He also called Allison a "snitch" and accused her of filing "paperwork every day snitching on everybody." Id. Allison alleges that Boggs threatened her on several occasions and that other inmates started "calling her all types of names," such as "old faggot ass" and "hot ass rapist," and threatened to harm her themselves. Id. at 23–34.

**B.    Evidence Relevant to Exhaustion**

**1.    Inmate Grievance Procedure**

The Virginia Department of Corrections (VDOC) has established a grievance procedure for inmates that is set forth in VDOC Operating Procedure (OP) 866.1 C. Vilbrandt Aff., ECF No. 52-1, ¶ 4. Grievable issues include actions of staff that affect an inmate personally. OP 866.1 § III(B)(1) (eff. Jan. 1, 2021, amended Apr. 1, 2023), Vilbrandt Aff. Encl. A, ECF No. 52-1.

Pursuant to OP 866.1, inmates must first attempt to resolve an issue informally before filing a regular grievance. If a verbal complaint is not resolved to an inmate's satisfaction, the inmate may submit a written complaint. Id. § I(D)(2). If an inmate does not receive a timely

response to a written complaint or if the inmate is dissatisfied with the response, the inmate may file a regular grievance. Id. § I(D)(4).

Regular grievances generally must be submitted within 30 days from the date of the incident or the discovery of the incident. Id. § III(B)(5). However, a regular grievance may be rejected at intake for several reasons, including if it is "repetitive of another grievance." Vilbrand Decl. ¶ 11. If a regular grievance is accepted at intake, staff must log it into VACORIS, and issue a grievance receipt within two working days. OP 866.1 § III(C)(4). When a regular grievance is accepted and logged into VACORIS, the warden or assistant warden is responsible for providing a Level I response within 30 days of the issuance of the grievance receipt, unless a continuance is authorized. Id. § III(F)(2). If an inmate "does not agree with the grievance response [or] the disposition of the grievance," the inmate may submit a grievance appeal within five days of receiving the Level I response. Id. § IV(B). OP 866.1 explains that an inmate satisfies the requirements for exhausting administrative remedies when a regular grievance "has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." Id. § V(B). "Once the offender has met the exhaustion requirement, the appeal respondent must notify the offender that all requirements have been exhausted." Id. § V(C).

### 2.    Allison's Exhaustion Efforts

In support of the pending motion for summary judgment, Boggs submitted an affidavit executed by C. Vilbrandt, the grievance coordinator at Wallens Ridge. Although "VDOC records document that Allison was incarcerated at WRSP from September 22, 2023, to July 14, 2025," Vilbrandt's declaration indicates that she limited her review of Allison's grievance

3

file to the period between "April 1, 2024, through November 15, 2024," which encompasses specific dates referenced in Allison's complaint. Vilbrandt Aff. ¶¶ 15–16; see also Vilbrandt Aff. Encl. B (copy of Allison's grievance report from April 1, 2024, through November 15, 2024). Based on her review of records from that particular period, Vilbrandt avers that Allison did not submit a written complaint or regular grievance alleging that "Boggs called Allison a 'snitch' in front of other inmates or singled Allison out for harassment and discriminatory treatment during the months of May, June, July, August and September 2024 because of Allison's gender identity and sexual orientation." Vilbrandt Aff. ¶¶ 3, 18.

Although Allison did not respond to the pending motion for summary judgment, Allison alleged in her verified complaint that she filed a grievance concerning the issues raised in this case and that she appealed the grievance to the highest level. Compl. at 2. Additionally, along with the verified complaint, Allison submitted exhibits to support this allegation.

The exhibits include a written complaint signed on October 2, 2023, in which Allison alleged that both day and night shift officers were exhibiting "deliberate indifference to a substantial risk of serious harm to an older black transgender" inmate by "persistently" calling her a "hot m.f. and snitching m.f." ECF No. 1-1 at 21. Allison further alleged that the officers' actions were "put[ting] her at an extremely high risk of being sexually and physically assaulted" and "subjecting her to all forms of harassment and abuse." Id. The written complaint was assigned to a unit manager, and on October 17, 2023, the unit manager responded that the complaint was "repetitive" and that Allison's allegations had been raised in a previous written complaint. Id.

4

Allison then filed a regular grievance containing the same allegations of being repeatedly called a snitch and a "hot m.f." by correctional officers in front of other offenders Id. at 22. She alleged that officers were exposing her to "an extremely high risk of being sexually and physically assault[ed]" and subjecting her to harassment by staff and other offenders. Id. She requested that a thorough investigation be conducted regarding the "ongoing deliberate indifference to her health [and] safety by [Wallens Ridge] officials daily seeking to have [her] murder[ed] because she is an older black transgender" inmate. Id.

In a Level I decision dated December 6, 2023, J. Artrip reported that the chief of housing and programs had reviewed the grievance and determined that it was "a repetitive complaint." Id. at 24. Based on that information, the grievance was deemed "unfounded." Id.

Allison appealed the Level I response to Level II. Id. On December 15, 2023, the regional administrator upheld Artrip's decision, noting that multiple staff members had denied using derogatory language. Id. at 25. In accordance with OP 866.1, the regional administrator advised Allison that it was her "last level of appeal" and that she had "exhausted all administrative remedies." Id.

## II.    Standard of Review

Under the Federal Rules of Civil Procedure, a party may move for summary judgment on a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. When ruling on a motion for summary judgment, the court "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." Shaw v. Foreman, 59 F.4th 121, 129 (4th Cir. 2023).

### III.    Discussion

Boggs has moved for summary judgment on the affirmative defense of failure to exhaust administrative remedies. See Gowen v. Winfield, 130 F.4th 162, 176 (4th Cir. 2025) ("Failure to exhaust is an affirmative defense for which the Officers bear the burden of proof."). Relying on the grievance coordinator's review of grievance records from April 1, 2024, through November 15, 2024, Boggs argues that Allison "failed to utilize the administrative remedies available to her regarding her allegations that Sgt. Boggs called her a snitch and derogatory names to harass, discriminate or endanger her safety." Def.'s Br. Supp. Mot. Summ. J., ECF No. 52, at 7–8. For the following reasons, the court disagrees and concludes that Allison's previous grievance complaining about the same course of conduct satisfied the exhaustion requirement.

The PLRA provides that no action shall be brought in federal court by an inmate challenging prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "proper exhaustion of administrative remedies is necessary" to satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 84 (2006). In order to properly exhaust administrative remedies, an inmate "must 'complete the administrative review process in accordance with the applicable procedure rules'—rules that are not defined by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted) (quoting Woodford, 548 U.S. at 88).

In Jones, the Supreme Court addressed the issue of whether prison grievances must name particular defendants in order to satisfy the exhaustion provision of the PLRA. Id. at

6

218–19. The Court held that the PLRA itself does not impose such a requirement. Id. at 218. Although the Court acknowledged that a "name all defendants" requirement might "promote early notice to those who might later be sued," the Court noted that promoting such notice "has not been thought to be one of the leading purposes of the exhaustion requirement." Id. at 218–19. Instead, the Court has "identified the benefits of exhaustion to include allowing a prison to address complaints about a program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. at 219; see also Woodford, 548 U.S. at 94 (explaining that requiring proper exhaustion "provides prisons with a fair opportunity to correct their own errors"). "Accordingly, to satisfy the exhaustion requirement, grievances generally need only be sufficient to 'alert[] the prison to the nature of the wrong for which redress is sought.'" Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). Additionally, "[i]n order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." Id. (quoting Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013) (collecting cases)); see also Sheltra v. Christensen, 124 F.4th 1195, 1201 (9th Cir. 2024) (explaining that "courts have applied the continuing-violations doctrine in the context of exhaustion of administrative remedies under the PLRA to treat events occurring after an inmate's grievance as nonetheless exhausted when the later-occurring events are part of the single continuing harm or course of conduct that the inmate grieved"). "Thus, once a prison has received notice of, and an opportunity to correct,

7

a problem, the prisoner has satisfied the purposes of the exhaustion requirement." Wilcox, 877 F.3d at 167 n.4 (quoting Turley, 729 F.3d at 650).

Having reviewed the record and applicable law, the court concludes that Boggs is not entitled to summary judgment on the exhaustion defense. The record reflects that Allison filed more than one written complaint and a regular grievance complaining about the same course of conduct on which his remaining claims against Boggs are based. Allison specifically alleged that correctional officers were repeatedly calling her a snitch and referring to her in a sexually derogatory manner, that the officers' actions posed a substantial risk to her safety, and that the officers wanted her to suffer harm because she is a transgender inmate. The record also reflects that Allison appealed the Level I response to her regular grievance to the regional administrator at Level II, as required to exhaust her administrative remedies under OP 866.1.

Although the previous administrative filings did not mention Boggs by name, they plainly alerted prison officials to "the nature of the wrong for which redress is sought." Wilcox, 877 F.3d at 167 n.4. They also made clear that the challenged actions by Wallens Ridge correctional staff were persistent and ongoing. And because the same course of conduct of which Allison complained allegedly continued after correctional officials rejected her regular grievance and her grievance appeal, she was not required to file successive grievances raising the same issues. Id.; see also Sheltra, 124 F.4th at 1203 (agreeing with several sister circuits that "a properly exhausted prison grievance asserting 'one, continuing harm or a single course of conduct' can exhaust events arising out of the same alleged violation that occur after the grievance was made") (quoting Morgan v. Trierweiler, 67 F.4th 362, 369–70 (6th Cir. 2023)). This conclusion is buttressed by the fact that repetitive grievances may be rejected at intake

under the VDOC grievance policy, and Allison was specifically informed on more than one occasion that her complaints about being labeled a snitch by correctional officers and subjected to harassment and abuse on the basis of her transgender status were repetitive. Under these circumstances, it "would make little sense" to require an inmate "to file repeated grievances" regarding the same course of conduct. Johnson v. Johnson, 385 F.3d 503, 521 (5th Cir. 2004) (concluding that a plaintiff's grievance was "sufficient to exhaust claims that arose from the same continuing failure to protect him from sexual assault," particularly since prison rules "specifically direct prisoners not to file repetitive grievances about the same issue") (emphasis in original).

## IV.    Conclusion

For the reasons stated, Boggs's motion for summary judgment on the defense of failure to exhaust administrative remedies, ECF No. 51, is **DENIED**. Boggs shall have 60 days to file any motion for summary judgment addressing the merits of Allison's remaining claims.

An appropriate order will be entered.

Entered: June 29, 2026

Michael F.
Urbanski
U.S. District Judge
2026.06.29
11:26:15 -04'00'

Michael F. Urbanski
Senior United States District Judge

9